IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HARLEY C. BLAKE, JR.,**            ) | |
|        Plaintiff,                              ) | |
|                                                                  ) | |
|            v.                                                 ) | **Civil Action No. 2005-0343** |
|                                                                  ) | |
| **JO ANNE B. BARNHART,**              ) | |
| Commissioner of Social Security,   ) | |
|        Defendant.                           ) | |

**MEMORANDUM OPINION**

**October 24, 2005**

      I.       Introduction

Plaintiff Harley C. Blake brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under title II of the Act. Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the memoranda of the parties, and the entire record, the Court finds that the ALJ had substantial evidence to conclude that plaintiff's subjective complaints of pain were only partially credible and find plaintiff not disabled by application of the grids. The Court therefore grants the Commissioner's motion for summary judgment, denies plaintiff's motion for summary judgment, and enters judgment in favor of the Commissioner.

## II.     Procedural History

Plaintiff filed an application for DIB on August 27, 2002 claiming disability as a result of back pain. R.58. He claims that the back pain began in July of 1997 and he was unable to work due to his back pain starting August 2002. Plaintiff suffers from two bulging discs, a herniated disc, an inability to bend, and a shooting pain down his legs and lower back. R.58. After his claim was denied at the administrative level, plaintiff requested a hearing. Plaintiff, represented by counsel, appeared and testified at his hearing on April 8, 2003 before ALJ James J. Pileggi. No other persons testified at this hearing.

In a decision dated July 3, 2003, the ALJ found that plaintiff had a back impairment that is severe based on 20 C.F.R. § 404.1520(b), but this impairment is not so severe as to meet or medically equal one of the listed impairments under 20 C.F.R. Appendix 1, Subpt. P, Regulation No. 3. R.14. Further, the ALJ found that although plaintiff cannot perform his previous duties as a laborer or maintenance foreman, he is still capable of performing a full range of unskilled sedentary work. R.16. As a result of these findings, the ALJ concluded that plaintiff is "not disabled" as directed by the Medical-Vocational Guidelines. R.17.

Plaintiff sought review of the ALJ's decision and the Appeals Council found no reason to review the ALJ's decision and denied Blake's request for review. Plaintiff timely commenced this action, which is now before this Court on the cross motions for summary judgment, under Rule 56 of the Federal Rules of Civil Procedure.

**III.   Statement of the Case**

**A.   Factual Background**

At the time of the ALJ's decision, plaintiff was a 36-year-old male with a 7th grade education. Plaintiff previously worked as a laborer at a cheese factory and as a maintenance foreman at a steel mill. R.71. These jobs required him to frequently lift 25 pounds and sometimes required him to lift more than 100 pounds. R.72. His lower back pain began in July of 1997. Plaintiff stopped working due to his back pain in August 2002. R.58.

On June 18, 2002, Plaintiff underwent an x-ray of his lumbar spine that revealed mild degenerative changes and slight scoliosis. R. 104. One month later, a lumbar spine MRI revealed desiccation of the L5-S1 disc and diffuse bulging of the disc at the L4-5 and L5-S1 levels. R.102. In September 2002, a lumbar myelogram was unremarkable and no obstruction of the thecal sac was appreciated. R.127. On September 10, 2002, a lumbar spine CT scan evidenced a bulging disc at the L4-5 level and mild sclerotic changes that are compatible with mild degenerative disc disease. R.128. Plaintiff also suffered from tension headaches and underwent a head CT scan, which was normal, on February 7, 2002. R. 133.

Plaintiff underwent various forms of treatment to ease symptoms. Robin Molaskey, D.O., gave plaintiff a therapeutic lumbar epidural with steroid for his back pain on August 15, 2002. Alexander Borowicz, a physical therapist with Benjamin Shipton, D.O., evaluated plaintiff at Mercer Physical Therapy in August 2002. Mr. Borowicz recommended four weeks of physical therapy. R.108,109. Although plaintiff told Dr. Schibli that he underwent four weeks of physical therapy in August 2002, notes from the trainers at Mercer Physical Therapy Associates indicate that plaintiff cancelled or failed to show up for all of his appointments other than the initial

evaluation. R.106, 167. Plaintiff also found various pain medications helpful, including Hydrocodone, Darvacet, and Vicodin. R.112,113. Dr. Baghai, a neurosurgeon, performed a microdiscectomy on November 7, 2002. R.145. After the surgery, Dr. Baghai noted that plaintiff walked without difficulty and only prescribed Tylenol® for any surgery related pain. R.153.

Diane Horneman, CRNP, and Robert Landried, D.O., presented a consultation report detailing plaintiff's history and recommended a transforaminal epidural steroid injection. R.167-171. The plaintiff stated that he could perform the activities of daily living with the exception of tying his shoes and shoveling snow. R.168. Plaintiff was able to heel-toe and tandem walk without much difficulty. R.170. He was also able to squat rise and performed well on a straight leg raising test. R.171. Horneman and Dr. Landried recommended more steroid injections to alleviate the pain. Dr. Landried performed the epidural steroid injection in March of 2003 and stated that plaintiff would receive two more injections. R.166.

**B.   The ALJ's Findings**

The ALJ made the following specific findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability, August 12, 2002.

3. The claimant has a back pain impairment, which is considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding his limitations are partially credible for the reasons set forth in the body of the decision.

6.  The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7.  The claimant retains the residual functional capacity for the full range of unskilled sedentary work (20 CFR § 404.1567).

8.  The claimant is unable to perform any of his past relevant work (20CFR § 404.1565).

9.  The claimant is a "younger individual" (20 CFR § 404.1563).

10. The claimant has "limited education" (20 CFR § 404.1564).

11. In view of the claimant's youth, transferability of work skills is not material (20 CFR § 404.1568).

12. The claimant has the residual functional capacity to perform a significant range of sedentary work.

13. The claimant's exertional limitations allow him to perform the full range of unskilled sedentary work, using Medical-Vocational Rule 201.24 and Section 202.00 for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs are referred to in the Medical Vocational Guidelines, and include benchwork positions.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

**IV.   Standards of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review

---

[1] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent and applicable to those rendered under Title XVI. *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court

---

42 U.S.C. § 405(g).

[2]Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both

medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the

> claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, she will be deemed disabled where she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. §

423 (d)(2)(A). In order to prove disability under this second method, plaintiff first must demonstrate the existence of a medically determinable disability that precludes her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that she is unable to resume her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(B), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments

without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195.  Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a Listed Impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,*  247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he or she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported

by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c) (2002).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at  1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may

discount claimant's pain *without contrary medical evidence*. *Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

V.      **Discussion**

In his brief in support of his motion for summary judgment, plaintiff raises the following challenges to the ALJ's determination: 1) the ALJ improperly rejected plaintiff's testimony regarding his impairments or the pain he suffers; 2) the ALJ did no analysis of the job requirements or how unskilled sedentary-level work would affect his lower back; and 3) the ALJ failed to differentiate how the work in an unskilled sedentary category varies from the past relevant work that plaintiff is no longer capable of performing. The Commissioner argues that the ALJ had substantial evidence to support his finding that plaintiff is not disabled.

**The Grids**

The Medical-Vocational Guidelines, or "grids," 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2002), can be used to establish that jobs exist in the economy that a person with similar exertional limitations can perform. *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). However, the grids do not establish the existence of jobs for individuals with both exertional and

nonexertional impairments. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). Testimony from a vocational expert or additional evidence, such as a learned treatise, is necessary to determine the availability of jobs for individuals if the ALJ finds exertional and nonexertional limitations. *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000). Examples of exertional impairments include difficulty reaching, sitting, standing, walking, lifting, and carrying. 20 C.F.R. § 404.1569a(a) (2005). Nonexertional limitations include manipulative or postural limitations such as reaching, handling, stooping, crouching, or other similar activities. Plaintiff's complaints regard his ability to sit, stand, or lift objects. Because these are all exertional limitations, the ALJ properly applied the grids in his decision.

Medical-Vocational Rule 201.24 directs a finding of not disabled if the claimant is a younger individual (age 18-44), with a limited education, and capable of performing the physical exertional requirements for sedentary work in the grids. Rule 201.24 C.F.R. Part 404, Subpart P, App. 2. The ALJ's finding that plaintiff is a younger individual with a limited education is not contested by plaintiff.

The ALJ found that the plaintiff could perform the full range of sedentary work. The ALJ's factual conclusions coincide with the physical exertional requirements for sedentary work in the grids. Sedentary work involves lifting no more than 10 pounds at a time and requires mostly sitting, with some walking and standing. 20 C.F.R. § 404.1567 (2005). The ALJ specifically addressed plaintiff's ability to lift up to ten pounds and stand or walk with normal breaks during the day and the medical evidence supports this. R.16. Specifically, plaintiff testified that he could lift up to ten pounds and the Physical Residual Functional Capacity Assessment determined that he could sit for up to six hours in a normal eight-hour work day.

R.135, 182.  As long as the ALJ properly assessed plaintiff's subjective complaints of pain, he properly applied the grids for decision making.

### **Determination that Claimant's Pain Is Partially Credible**

The Commissioner may conclude that a claimant's testimony regarding pain, although connected to a discernible medical condition that could reasonably cause such pain, is only partially credible if his conclusion is supported by substantial evidence in the record.  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).  In that case, the ALJ relied on the objective medical record, the claimant's own testimony, and claimant's description of daily activities to explain why the ALJ did not consider the subjective complaints of pain to be credible.  *Id*.  The Third Circuit affirmed the ALJ's decision because the explanation was supported by substantial evidence.  *Id*.

When the ALJ rejects subjective complaints of pain, he must explain his rationale in order for the reviewing court to determine whether the rejection was improper.  *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981).  Additionally, the explanation must be clear and logical, with details as to why certain statements were discounted.  *Schaudeck v. Commissioner of SSA*, 181 F.3d 429 (3d Cir. 1999) (explaining that the ALJ must take all of the evidence into consideration when interpreting claimant's testimony regarding pain).

In this case, the ALJ relied on the medical record, claimant's testimony, and claimant's description of daily activities to determine that plaintiff's subjective complaints of pain were only partially credible.  The Physical Residual Functional Capacity Assessment only limited plaintiff to sitting for six hours in a normal eight-hour workday.  R.135.  Plaintiff was able to heel toe and tandem walk with minimal difficulty.  R.15.  Further, the trigger point injections eased plaintiff's

pain. R.15. The ALJ also noted that plaintiff claimed that he could perform his daily activities without much trouble, except for tying his shoes. R.15. Plaintiff's testimony and the doctors' opinions are both consistent with the determination made by the ALJ that plaintiff's complaints of pain were only partially credible. Regarding plaintiff's claim that he cannot sit for an extended period of time, plaintiff testified that he sat for an hour and a half before the trial started. R.181, 82. This testimony negates plaintiff's claims that he could not sit for longer than half an hour. Additionally, sedentary work requires a certain amount of walking and standing which would afford plaintiff breaks from sitting. 20 C.F.R. § 404.1567 (2005). Accordingly, the ALJ used substantial evidence to find that plaintiff's complaints of pain were only partially credible and do not preclude him from performing the physical exertion requirements of sedentary work.

### VI. Conclusion

The Court has reviewed the ALJ's findings of fact and decision, and determines that the the ALJ had substantial evidence to conclude that plaintiff's subjective complaints of pain were only partially credible and find plaintiff not disabled by application of the grids. Accordingly, this Court will grant the Commissioner's motion for summary judgment, deny plaintiff's motion for summary judgment, and enter judgment in favor of the Commissioner.

An appropriate order will follow.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge